[Cite as *Salinda Invest. Group v. Lake Cty. Util. Dept.*, 2018-Ohio-4665.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| THE SALIDA INVESTMENT GROUP d.b.a. JOEY'S ITALIAN GRILLE, | : | **O P I N I O N** |
| | : | |
| Appellant, | : | |
| | : | **CASE NO. 2017-L-091** |
| - vs - | : | |
| LAKE COUNTY UTILITIES DEPARTMENT, | : | |
| | : | |
| Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Case No. 14 CV 000901.

Judgment: Affirmed.

*Richard N. Selby*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Appellant).

*Charles E. Coulson*, Lake County Prosecutor, and *Michael L. DeLeone*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Appellee).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Salida Investment Group, appeals the trial court's determination affirming an administrative decision under which it is required to pay additional capacity fees for water and wastewater services. Appellant contends that the additional fees are unjustified because the nature of its water usage in its business has remained the same through the years. We uphold the trial court's ruling.

{¶2} This is the second appeal appellant has pursued in this matter. In *Salida Invest. Group v. Lake Cty. Util. Dept.*, 11th Dist. Lake No. 2015-L-004, 2015-Ohio-5066, we summarized the basic facts in the following manner:

{¶3} "Appellant is the owner of a restaurant in Madison Township, Lake County, Ohio. When the restaurant moved to its current location in 2002, appellant received a bill from appellee, Lake County Utilities Department, covering initial tap-in/capacity fees for water treatment and wastewater treatment. Appellant paid the initial fees, and thereafter paid a quarterly fee for water usage.

{¶4} "As of 2002, the restaurant had a seating capacity of 132 customers inside its building as well as an outdoor patio where the restaurant served additional customers during the summer months. Appellant was issued an occupancy permit for 350 persons.

{¶5} "Ten years later, appellant enclosed a section of the patio area. When the enclosure was complete, appellant was issued a new occupancy permit. This prompted appellee to investigate whether appellant should be charged additional tap-in/capacity fees. Appellee monitored the restaurant's water usage over a period of time, and at the conclusion, sent appellant notice that it was liable for additional tap-in/capacity fees of $5,721.90 for water treatment and $24,095.62 for wastewater treatment.

{¶6} "Appellant appealed to the Lake County Utilities Board of Appeals. On February 27, 2014, the board held an oral hearing, during which the parties presented evidence. One month later, the board upheld the additional tap-in/capacity fees." *Id.* at ¶2-5.

{¶7} Appellant then appealed the administrative decision to the common pleas court. Before the appeal could proceed on the merits, appellee moved to dismiss on the

2

basis that appellant failed to submit a statutorily-required supersedeas bond. The issue focused upon the nature of the appeal appellant was pursuing before the trial court; i.e., would appellant be raising questions of both law and fact, or would the appeal be limited to questions of law? In its judgment dismissing the appeal, the trial court concluded that appellant had been required to post a supersedeas bond under R.C. 2505.06 because its notice of appeal stated that it intended to advance both legal and factual issues.

{¶8} On appeal, this court reversed the trial court's determination, holding that, even if the failure to post a supersedeas bond deprived the trial court of its authority to hear the appeal on questions of both law and fact, the matter could still proceed on pure legal questions alone if those questions could be decided without resolving any type of factual dispute. *Id.* at ¶24-25. Therefore, we remanded the case and instructed the trial court to determine whether the questions of law appellant sought to argue could satisfy the standard as stated in our opinion.

{¶9} After permitting both sides to file further briefing on the remand issue, the trial court rendered a judgment finding that, notwithstanding appellant's initial statement that it wanted to assert questions of both law and fact, it was still possible for the appeal to go forward solely on questions of law. As a result, the court denied appellee's motion to dismiss the appeal.

{¶10} The case then went forward on the administrative record and the parties' competing briefs on the final merits. In its brief, appellant argued that appellee violated its own code of regulations in deciding that it had the authority to reevaluate the amount appellant should be charged in tap-in/capacity fees covering both water and wastewater treatments. Citing Sections 1.38 and 1.47 of appellee's regulations, appellant asserted

3

that appellee was not permitted to recalculate the amount of the fees unless there was a change in "property use." Based upon this standard, appellant maintained that it could not be charged any additional fees because the enclosure of its patio did not constitute a change in property use.

{¶11} In response, appellee emphasized that, as a result of the enclosure of the patio, the number of persons appellant could seat inside for dinner increased from 132 to 231. Appellee contended that, given these circumstances, it had to have the ability to reassess the total amount of the tap-in/capacity fees because business property owners could avoid paying the correct amount by simply waiting until after their payment of the initial fees to expand their business.

{¶12} In its final judgment, the trial court upheld the decision of the utilities board of appeals that the imposition of additional tap-in/capacity fees was warranted in light of the enclosure of the patio. The court held that the evidence presented before the board supported the conclusion that appellant's "use" of its property changed as a direct result of enclosing the patio. The court noted that the construction of the enclosure meant that the patio area could be used all year instead of only during the summer.

{¶13} In challenging the foregoing judgment, appellant assigns the following as error:

{¶14} "The trial court erred by affirming the decision of the Lake County Utility Appeals Board."

{¶15} Under this assignment, appellant contests the trial court's conclusion that the undisputed facts support the finding of a change in the use of its property. Appellant argues that, for purposes of the utilities department's code of regulations, the word "use"

4

is meant to refer to the type of business a property owner operates on its property, not the size of the business. Based upon this, appellant further contends that, even though the number of customers it can serve all year has increased, it cannot be charged any additional tap/capacity fees because its basic "use" of the property, i.e., as a restaurant, has stayed the same.

{¶16} R.C. 2506.04 sets forth the standard of review for a common pleas court hearing an administrative appeal:

{¶17} "[T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole of the record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision * * *."

{¶18} Therefore, regarding factual issues, "the standard of review applied by the common pleas court is whether there is a preponderance of substantial, reliable, and probative evidence in the record to support the decision of the administrative entity." *Green Vision Materials, Inc. v. Newbury Twp. Bd. of Zoning Appeals*, 11th Dist. Geauga No. 2013-G-3136, 2014-Ohio-4290, ¶49. However, in relation to questions of law, R.C. 2506.04 does not place any limit upon the common pleas court's standard of review; i.e., the administrative determination can be reversed if it is illegal or unconstitutional. *MacDonald v. Shaker Hts. Bd. of Income Tax Rev.*, 144 Ohio St.3d 105, 2015-Ohio-3290, 41 N.E.3d 376, ¶15. Similarly, an appellate court's standard of review on issues of law is de novo. *Id.* citing *Cincinnati Bell Tel. Co. v. Cincinnati*, 1st Dist. Hamilton Nos. C-950931, C-9500932, and C-950933, 1996 WL 733154, *1 (Dec. 24, 1996).

5

{¶19} Here, appellant has raised a legal question as to the proper interpretation of appellee's code of regulations governing when additional tap-in/capacity fees can be imposed. As to the water treatment fee, the controlling provision is Section 1.38.E.3, which provides, in pertinent part:

{¶20} "Water treatment plant capacity fees are directly dependent on how a property is used by its owner or tenant. Issuing a permit guarantees that a portion of the water treatment plant is made available for the permit holder's use. If the property use changes at any time, the [department] may reevaluate the water service permit and recalculate the water treatment plant capacity fee. Although the [department] will not buy back capacity once allocated, the [department] may charge the property owner *for the difference in the water treatment plant capacity fee when the change of use increases the treatment plant capacity required to provide service to the property*." (Emphasis added).

{¶21} As to the wastewater treatment fee, the controlling provision is Section 1.47.E.3. That provision has a paragraph that is identical to the foregoing, except that it refers to "wastewater treatment plant capacity fee" rather than "water treatment plant capacity fee."

{¶22} In asserting that the term "use" in both of the governing sections is meant to refer to the type of business operating on the subject property, appellant claims that when appellee calculated the original tap-in/capacity fees, it employed a chart of the estimated sewage flow rate that it received from the federal government. Appellant further claims that the chart listed a variety of businesses, including restaurants that did not remain open 24 hours a day. Appellant maintains that its business falls within that category of "use," and it is that "use" which must change before appellee can charge for

additional tap-in/capacity fees.

{¶23} However, appellant's interpretation directly conflicts with the unambiguous language in the last two sentences of Sections 1.38.E.3 and 1.47.E.3. As noted above, those sentences provide that, in recalculating the tap-in/capacity fees following a change in use of the property, appellee will charge the property owner for the increase in the treatment plant capacities that is necessary to provide proper service to the tract. Given this basis for calculating the additional fees, i.e., increased capacities, the word "use" refers to the amount of additional service which must be provided in order to meet the property's water and wastewater needs. Any other interpretation contradicts the plain language of the controlling sections.

{¶24} There is no dispute that, by enclosing a portion of its patio area, appellant increased the number of customers it could serve indoors by 99. Although some of the new indoor seating overlapped the existing seating on the patio, the patio was only open for business when the weather allowed. Thus, as the trial court aptly found, the enclosure of the patio allowed appellant to serve those customers all year. In turn, this would result in additional water usage and additional wastewater coming from appellant's business and property. For this reason, the trial court did not err in holding that there was sufficient evidence to warrant a finding that appellant's use changed in light of the enclosure of the patio.

{¶25} Before the trial court, appellant stated that, in making the initial calculation of the tap-in/capacity fees, appellee must have assumed that the patio was open for the entire year. However, during the evidentiary hearing before the appeals board, it was established that appellant was not charged for the seating on the patio. Therefore, this

7

is not a situation in which appellant is being charged twice for the same usage.

**{¶26}** As a separate argument under its assignment, appellant asserts that, even if the imposition of additional tap-in/capacity fees was warranted, appellee did not use the proper method for determining the amount of the additional fees. As the basis for the new calculation, appellee reviewed appellant's actual water usage over a number of months. Appellant takes the position that appellee should have again used the federal government chart, just as it had in calculating the initial tap-in/capacity fees. The trial court did not address this argument in its final judgment.

**{¶27}** Appellee's reliance upon actual usage was predicated upon the following separate provision in Sections 1.38.E.3 and 1.47.E.3:

**{¶28}** "Upon written request of the applicant or at the discretion of the [department], a ONE TIME detailed review of actual water usage at the applicant's specific structure shall be made after the first four (4) billing quarters at full occupancy or operation and before the end of the fifth billing quarter at full occupancy or operation."

**{¶29}** Appellant argues that, under the plain language of the provision, appellee can only invoke it approximately one year after the initial tap-in/capacity fees have been imposed. Thus, according to appellant, the detailed review of the usage at its building could have only been done in 2003, one year after it opened the restaurant. However, this interpretation ignores that the provision does not apply until the structure is at full occupancy or operation.

**{¶30}** With the enclosure of the patio, appellant's occupancy level increased by 99 persons. Therefore, once appellant was able to begin serving all of those additional persons, it was operating at a higher level than it had during the prior ten years. Under

8

these facts, appellee had the discretion to invoke the provision and base its calculation of the additional fees upon its review of the restaurant's actual water usage.

{¶31} Since the trial court did not err in upholding the board's administrative decision, appellant's sole assignment lacks merit. The judgment of the Lake County Court of Common Pleas is affirmed.

DIANE V. GRENDELL, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.